## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

CLAUDE MILLS,

                Plaintiff,

v.                               CIVIL ACTION NO.  2:19-cv-00727

WEXFORD HEALTH SOURCES, INC., et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Charles Lye, M.D., Sandra May, Josh Shrewsberry, and Wexford Health Sources, Inc.'s ("Wexford Health") (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint.  (ECF No. 37.)  By standing order entered on January 4, 2016, and filed in this case on October 7, 2019, (ECF No. 5), this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition ("PF&R").  Magistrate Judge Tinsley entered his PF&R on January 21, 2022, recommending that this Court grant Defendants' Motion to Dismiss, and further dismiss Plaintiff's claims against the remaining Defendants named in the Amended Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B), for failure to state a claim upon which relief can be granted.  (ECF No. 39.)  Plaintiff previously moved for an extension of the deadline to file objections to the PF&R, (ECF No. 41), and by order entered January 28, 2022, (ECF No. 42), this Court extended the objection deadline until February 27, 2022.  Plaintiff timely filed his Objection to the PF&R on January 31, 2022.  (ECF No. 43.)

For the reasons outlined in greater detail below, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's PF&R, **GRANTS** Defendants' Motion to Dismiss, (ECF No. 37), and **DISMISSES** Plaintiff's Amended Complaint, (ECF No. 35), for failure to fully exhaust his administrative remedies prior to the initiation of this action.

## I.    BACKGROUND

As stated in the Amended Complaint, Plaintiff has brought an action pursuant to 42 U.S.C. § 1983, alleging that Defendants, "acting under the color of state law, depriv[ed] [him] of [his] rights guaranteed by the Constitution of the United States and/or under federal law. . . ." (ECF No. 35 at 4A-1.)   Specifically, Plaintiff alleges that each Defendant "acted with [d]eliberate [i]ndifference to [his] serious medical needs" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  (*Id.* at 4A-2.)

Plaintiff—who was imprisoned at Mount Olive Correctional Complex ("MOCC") at all times relevant hereto—asserts that he was brutally assaulted by multiple inmates on May 30, 2018, resulting in multiple stab wounds to his head, neck, back, and torso, and a portion of his ear being bitten off.  (*Id.* at 4A-6–7, ¶ 20.)  Plaintiff states that he "was transported to an off-sight emergency room at Charleston Area Medical Center" ("CAMC") to receive treatment for the injuries he sustained.  (*Id.* at 4A-7, ¶ 21.)  Plaintiff alleges that, while he was in CAMC's care, his treating physicians ordered a treatment plan and gave instruction regarding wound care, which he alleges were "ignored by Wexford [Health] and [its] staff and employees." (*Id.* at 4A-7, ¶ 22.)

Plaintiff has attached five medical records as exhibits to his Amended Complaint.  (*Id.*, Ex. M-1–M-5.)  Exhibit M-1 is a single page from Plaintiff's Discharge Summary from General Hospital.  (*Id.*, Ex. M-1.)  This record indicates that Plaintiff was diagnosed with "[a]cute head

trauma," a "right ear avulsion (human bite)," and "stab wounds to chest, neck, [and] hand." (*Id.*) Exhibit M-2 consists of two additional pages from Plaintiff's Discharge Summary, and indicates the course of action with respect to his injuries. (*Id.*, Ex. M-2.) Specifically, this exhibit includes instructions regarding daily wound care, prescription medication, and follow-up appointments. (*Id.*) Exhibit M-3 consists of Office Clinic Notes from AMB Facial Surgery Center. (*Id.*, Ex. M-3.) This exhibit documents the medications Plaintiff was prescribed to treat his injuries.[1] (*Id.*) Exhibit M-4 is a body chart indicating the bodily locations of Plaintiff's injuries. (*Id.*, Ex. M-4.) Exhibit M-5 is a copy of OMFS Office/Clinic Notes from Plaintiff's visit to the AMB Facial Surgery Center at CAMC on June 18, 2018. (*Id.*, Ex. M-5.) This exhibit indicates that Plaintiff and the accompanying correctional officers were instructed with regard to wound care, that Plaintiff was to continue receiving antibiotic, that his wounds were to be cleansed daily with peroxide and water, and that the xeroform wrap on his ear was to be changed daily. (*Id.*)

Upon return to MOCC, Plaintiff alleges that he "was placed under the care of Wexford [Health]," a contracted medical provider for MOCC. (*Id.* at 4A-7, ¶ 21.) Plaintiff claims that he "was placed in an isolation cell in [MOCC's] medical unit," and that Wexford Health staff failed to follow the treatment plan set forth by the off-sight physicians at CAMC. (*Id.* at 4A-7, ¶¶ 21–22.) Specifically, Plaintiff alleges that Wexford Health staff failed to change his bandages in accordance with the CAMC physicians' instructions, that his bandages began to leak fluid and pus,

---

[1] The following medications were prescribed to Plaintiff by Dr. Matthew Risendal, DO:

(1) Acetaminophen-codeine—one tablet oral every four hours as needed for pain; (2) Aspirin—one tablet oral every day, five refills; (3) Bacitracin Topical—one application topical three times per day, to be applied to the ear with xeroform gauze three times a day; (4) Ciprofloxacin—one tablet oral every 12 hours for seven days; (5) Clopidogrel—one tablet oral every day; (6) Cyclobenzaprine—one capsule oral every day as needed for spasm; (7) Nitroglycerin—one inch topical every four hours; (8) Sulfamethoxazole-trimethoprim—one tablet oral two times per day; and (9) Venlafaxine—150 milligrams oral every day.

3

that his wounds began to "smell of rotting flesh," and that Wexford Health staff ignored the CAMC physicians' instructions with regard to prescription medications.  (*Id.* at 4A-7 – 8, ¶¶ 23–25.)

Plaintiff also asserts in his Amended Complaint that Wexford Health was deliberately indifferent to another serious medical condition he suffered from.  (*Id.* at 4A-9, ¶ 27.)  Plaintiff alleges that Defendant Lye diagnosed him with Restless Leg Syndrome ("RLS") and prescribed him medication to treat this condition, but that Wexford Health nurses and staff failed to provide him with the prescribed medication.  (*Id.*)  However, these are the only factual allegations in Plaintiff's Amended Complaint with respect to Defendants' alleged failure to treat Plaintiff's RLS.

Plaintiff alleges that he fully exhausted all available administrative remedies prior to initiating the instant action.  (*Id.* at 4A-5.)  With regard to his claims that Defendants were deliberately indifferent to his stab wounds, Plaintiff submitted Grievance No. 18-MOCC-Q2-987 on December 10, 2018.  Grievance No. 18-MOCC-Q2-987 asserted the failure of Wexford Health staff to administer medications and otherwise abide by the treatment plan ordered by the CAMC physicians.  (*Id.* at 4A-6, ¶¶ 16–17.)  The unit manager assigned to this grievance rendered a decision on December 18, 2018, and Plaintiff did not appeal this decision to the Warden/Administrator until January 4, 2019.  The Warden/Administrator rejected Plaintiff's appeal as untimely, and Plaintiff's appeal of that decision was not received by the Commissioner until January 23, 2019.  The Commissioner also rejected this appeal as untimely.

Plaintiff also submitted Grievance No. 19-MOC-198, which related to Wexford Health staff's failure to properly treat his RLS.  However, Plaintiff never appealed the decision rendered with respect to this grievance.

After being permitted to file an amended complaint to cure deficiencies in the original complaint, Plaintiff filed an Amended Complaint on June 3, 2021.  (ECF No. 35.)  Defendants filed their Motion to Dismiss on June 11, 2021.  (ECF No. 37.)  Plaintiff did not respond to Defendants' Motion to Dismiss.  As noted above, the magistrate judge filed a PF&R, recommending that this Court grant Defendants' Motion to Dismiss, on January 21, 2022.  (ECF No. 39.)  In accordance with this Court's order entered January 28, 2022 extending the deadline for Plaintiff to file objections to the PF&R, (ECF No. 42), Plaintiff timely filed an Objection on January 31, 2022.  (ECF No. 43.)  Accordingly, Defendants' Motion to Dismiss has been fully briefed and is now ripe for adjudication.

## II.    LEGAL STANDARDS

### A.  Review of Magistrate Judge's Findings and Recommendations

The Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. S 636(b)(1)(C).  However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a plaintiff "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  In reviewing those portions of the PF&R to which Plaintiff has objected, this Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

*B. Conversion of Motion to Dismiss to Motion for Summary Judgment*

Defendants have attached two exhibits to their Motion to Dismiss.  (ECF Nos. 37-1; 37-2.)  The first exhibit, labeled Grievance No. 19-MOC-Q1-198, is a copy of Plaintiff's grievance form relating to Wexford Health's alleged failure to treat his RLS.  (ECF No. 37-1.)  The second exhibit, labeled Grievance No. 18-MOCC-Q2-987, is a copy of Plaintiff's grievance form relating to Wexford Health's alleged failure to follow the CAMC physicians' orders regarding treatment of his stab wounds.  (ECF No. 37-2.)

"Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion." *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004).  It "only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Id.*  Nevertheless, a court may consider extrinsic evidence at the 12(b)(6) stage if such evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice . . . ."  *Trigon Healthcare*, 367 F.3d at 234 (4th Cir. 2004) (internal quotations omitted).

Defendants contend that it would be proper for this Court to consider the grievances attached to their Motion to Dismiss because, although they are outside of the parties' pleadings, they are "integral documents to Plaintiff's claim in the Amended Complaint and are referenced

therein." (ECF No. 38 at 8.) Defendants do not explain why the two grievances are "integral" to the Amended Complaint, however, this Court has previously explained the test to determine whether extrinsic documents are "integral" to a complaint:

> [T]he referenced document [must] be central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted. The cases illustrate this requirement. Thus, where a complaint in a fraud action references a document containing the alleged material misrepresentations, the referenced document may be considered part of the complaint. Similarly, a newspaper article reporting allegedly fraudulent statements by a corporate officer may be considered part of the complaint in a securities fraud action, and an allegedly libelous magazine article referred to in a complaint may be considered part of the complaint in a libel action based on that article.

*Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

Here, it cannot be said that Plaintiff's grievance forms give rise to the legal rights asserted by him. Plaintiff's "asserted legal rights" arise from Wexford Health's alleged failure to administer the treatment plan ordered by Plaintiff's treating physicians at CAMC and Wexford Health's alleged failure to treat his restless leg syndrome. These "legal rights" do not arise from the submitted grievances. Although these grievances may contain information regarding Plaintiff's claims, they are not, as Defendants suggest, integral to the Amended Complaint because they do not give rise to the legal rights asserted by Plaintiff. Therefore, Defendants' Motion to Dismiss must be converted to a motion for summary judgment if the Court is to accept the grievances attached thereto.

Conversion of a Rule 12(b)(6) motion to a motion for summary judgment lies within this Court's discretion. *See Camastro v. City of Wheeling*, 49 F. Supp. 2d 500, 502 (S.D. W. Va. 1998) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). However, Rule 12(d) dictates

7

that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Although the attached grievances are not "integral" to Plaintiff's Amended Complaint, the Court accepts them and will take them into consideration, thereby converting Defendants' Motion to Dismiss to a motion for summary judgment. Plaintiff was given a reasonable opportunity to present all the material that is pertinent to Defendants' Motion to the extent it argues that he has failed to exhaust his administrative remedies. Despite being given an opportunity, Plaintiff did not respond to Defendants' Motion to Dismiss. The grievances relied on by Defendants show that Plaintiff failed to exhaust all available administrative remedies before instituting the instant action. Thus, consideration of these materials will streamline disposition of the instant action and will serve the interests of judicial economy. Accordingly, the Court **ACCEPTS** the grievances attached to Defendants' Motion to Dismiss and **CONVERTS** the motion to one for summary judgment.

### C. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. In pertinent part, this rule states that a court should grant summary judgment if "there is no genuine issue as to any material fact." Summary judgment should not be granted, however, if there are factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating these factual issues, the Court must view the

evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). "This burden may be met by use of the depositions and other discovery materials." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party meets its burden, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Should a party fail to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.    DISCUSSION

As noted above, the magistrate judge filed a PF&R on January 21, 2022, recommending that this Court grant Defendants' Motion to Dismiss, and further dismiss Plaintiff's claims against the remaining defendants named in the Amended Complaint for failure to state a claim upon which relief can be granted. (ECF No. 39 at 12.) Plaintiff timely objected to the PF&R, primarily arguing—in conclusory terms—that he alleged with sufficient plausibility the factual

circumstances constituting each Defendants' deliberate indifference to his serious health care needs.  (ECF No. 43 at 1–4.)

Although the magistrate judge is probably correct that the allegations contained in the Amended Complaint "are too conclusory to sufficiently state plausible claims for relief" against the named individual defendants, the Court has serious doubts about whether Plaintiff has failed to state a cognizable claim for denial of medical care under the Eighth Amendment against Wexford Health, particularly in light of the liberal pleading standard afforded to *pro se* litigants. Nevertheless, this Court need not address the sufficiency of Plaintiff's factual allegations contained in the Amended Complaint because it is clear from the grievances attached to Defendants' Motion that Plaintiff has failed to exhaust his available administrative remedies, as required by both the Prison Litigation Reform Act ("PLRA") and the West Virginia Prison Litigation Reform Act ("WVPLRA") prior to instituting the instant action.

The magistrate judge found it unnecessary to address the "alternative argument" for dismissal for failure to exhaust administrative remedies asserted by Defendants.  (ECF No. 39 at 11 n.1.)  However, this Court's prior precedent advises that administrative exhaustion is a threshold question that must be decided before determining the merits of a case.  *See Russell v. Butcher*, Civil Action No.: 2:19-cv-00918, 2020 WL 4043080, at *5 (S.D. W. Va. July 17, 2020).  Even so, the magistrate judge's characterization of Defendants' exhaustion argument as "alternative" is contrary to the presentation of Defendants' arguments in their Motion.  (ECF No. 38.)  Defendants first argued in their Motion that Plaintiff failed to exhaust his administrative remedies, before arguing that Plaintiff failed to allege sufficient factual allegations to establish a claim for deliberate indifference.  (*Id.* at 6–12.)  Therefore, because administrative exhaustion is a threshold

requirement, and because Defendants' primary argument for dismissal was that Plaintiff failed to exhaust his administrative remedies, this Court must first consider whether any genuine issues of material fact exist with regard to exhaustion, before turning to the merits of Plaintiff's claims. However, for the reasons outlined below, the Court need not assess the merits of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies.

Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Id.* (quoting *Creel v. Hudson*, Civil Action No.: 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. Sept. 12, 2017)). "Failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement, and thus inmates need not plead exhaustion, nor do they bear the burden of proving it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). However, in rare cases where a district court can conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse for failing to do so, failure to exhaust may be a basis for a dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (noting that failure to exhaust can, in some circumstances, be a basis for dismissal for failure to state a claim); *Legg v. Adkins*, Civil Action No.: 2:16-CV-01371, 2017 WL 722604, at *2 (S.D. W. Va. Feb. 23, 2017) (granting a motion to dismiss a prisoner's claims for failure to exhaust under the PLRA and WVPLRA); *see also Moore*, 517 F.3d at 725 (quoting *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007)) ("[W]e caution that only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.").

11

Both the PLRA and the WVPLRA require inmates to exhaust their available administrative remedies before bringing a lawsuit.  42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has interpreted the PLRA broadly, stating that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Similarly, the WVPLRA makes it mandatory for an inmate to first exhaust administrative remedies provided by the inmate's correctional facility before instituting a civil action challenging the inmate's confinement.  W. Va. Code § 25-1A-2; *see also White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility in which he/she is housed.").  The WVPLRA provides that "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted."  W. Va. Code § 25-1A-2(c).  An "ordinary administrative remedy" is "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . includ[ing] . . . complaints concerning . . . health care. . . ."  W. Va. Code § 25-1A-2(a).

The West Virginia Division of Corrections and Rehabilitation ("WVDOCR") sets the uniform procedures for filing an inmate grievance.[2] *See* W. Va. Code § 25-1A-2.  If an inmate fails to fully comply with the provisions of those rules, the inmate "shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies."  *Miller v. Rubenstein*, Civil Action No.: 2:16-CV-05637, 2018 WL 736044, at *5 (S.D. W. Va. Feb. 6, 2018) (citing Policy Directive 335.00(V)(D)(4)).

The procedure for filing an inmate grievance is as follows:

> An inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance."  Only one issue or complaint may be grieved per form, and the inmate must submit the form to his or her unit manager.  Upon receipt of the grievance form, the unit manager logs the grievance and assigns it a number.  The unit manager is required to return an answer to the grievance back to the inmate within five days.  If the unit manager fails to answer or reject the grievance within five days, the inmate may treat the non-response as a denial and proceed to the next level of review.  Appeals from the unit manager's response (or non-response, as the case may be) are submitted "to the Warden/Administrator within five (5) days from delivery of the response."  "The Warden/Administrator shall respond to the appeal ... within five (5) days."  Finally, if the warden's response is unsatisfactory, or if the warden does not respond within the applicable time, the inmate may appeal to the Commissioner of the Division of Corrections within five days of the warden's response or after the applicable time has passed.  The Commissioner is allotted ten days to respond to the appeal.

*Id.* (quoting Policy Directive 335.00).

Policy Directive 335.00 specifically states that "exhaustion" means "submitting an *accepted* grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner.  *Rejections do not constitute exhaustion*.  Remands are not final responses unless expressly stated in the decision."  *Hatcher v. Rubenstein*, Civil Action No.:

---

[2] Defendants direct the Court to Section 90 of the West Virginia Code Regulations as the authority which outlines the grievance procedure process.  Section 90, however, was repealed in 2016.  *See* H.D. 4060, 82d Leg., Reg. Sess. (W. Va. 2016).

2:17-CV-02054, 2018 WL 6036433, at *9 (S.D. W. Va. Aug. 8, 2018), report and recommendation adopted, Civil Action No.: 2:17-CV-02054, 2018 WL 4628321 (S.D. W. Va. Sept. 27, 2018) (quoting Policy Directive 335.00(V)(D)(4)) (emphasis added).  The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies." *Id.* (quoting Policy Directive 335.00(V)(A)(5)).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies under the PLRA and the WVPLRA.  With regard to Plaintiff's first grievance, Grievance No. 18-MOCC-Q2-987, Defendants argue that Plaintiff untimely filed his grievance on December 10, 2018, beyond the 15-day window proscribed by the inmate grievance procedure, and that Plaintiff did not timely appeal this grievance.  (ECF No. 38 at 9–10.)  With regard to Plaintiff's second grievance, Grievance No. 19-MOC-Q1-198, Defendants argue that Plaintiff did not appeal the grievance beyond the first level.  (ECF No. 38 at 8.)

According to the Amended Complaint, the alleged conduct that would have caused Plaintiff to file Grievance No. 18-MOCC-Q2-987—Wexford Health's alleged failure to administer health care in accordance with Plaintiff's treating physicians at CAMC—occurred during Plaintiff's four-month stay in MOCC's medical housing unit between June and September of 2018.  (ECF No. 35 at 4A-5–6.)  However, Plaintiff did not file a grievance for this conduct until December 10, 2018.  (*Id.* at 4A-6.)  Thus, for this reason alone, Plaintiff failed to exhaust his administrative remedies insofar as he failed to fully and properly comply with the provisions set forth in Policy Directive 335.00 as it relates to the procedure for filing inmate grievances.

14

Nevertheless, Plaintiff also failed to timely appeal Grievance No. 18-MOCC-Q2-987 to the Warden/Administrator.  Plaintiff had five days from his receipt of the unit manager's response—which occurred on December 18, 2018—to appeal Grievance No. 18-MOCC-Q2-987 to the Warden/Administrator.  (ECF No. 37-2.)  Plaintiff, however, did not appeal Grievance No. 18-MOCC-Q2-9897 until January 4, 2019, which resulted in the appeal being rejected by the Warden/Administrator as untimely.  (*Id.*)  Therefore, because Policy Directive 335.00 specifically states that rejected grievances "do not constitute exhaustion," and because Plaintiff failed to timely appeal Grievance No. 18-MOCC-Q2-987—which resulted in the rejection thereof—Plaintiff failed to exhaust his administrative remedies.

With regard to Plaintiff's second grievance, Grievance No. 19-MOC-Q1-198, Defendants argue that because Plaintiff did not appeal the grievance beyond the first level, he failed to exhaust his administrative remedies.  (ECF No. 38 at 8.)  Plaintiff filed Grievance No. 19-MOC-Q1-198 on April 18, 2019.  (ECF No. 37-1.)  The unit manager issued a response on April 22, 2019.  (*Id.*)  However, Plaintiff never appealed this grievance upon receipt of the unit manager's response.  (*Id.*)  As noted above, Policy Directive 335.00 specifically states that "exhaustion" means "submitting an accepted grievance and *properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner*."  *Hatcher*, 2018 WL 6036433, at *9 (quoting Policy Directive 335.00(V)(D)(4)) (emphasis added).  Therefore, because Plaintiff did not appeal Grievance No. 19-MOC-Q1-198 beyond the unit manager's response thereto, Plaintiff failed to exhaust his administrative remedies with respect to the injuries alleged in this grievance.

Because Plaintiff failed to exhaust his administrative remedies under the PLRA and the WVPLRA prior to instituting the instant action, this Court must dismiss Plaintiff's Amended

Complaint.  *See* 42 U.S.C. § 1997e(a) ("No action *shall* be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as available are exhausted*.") (emphasis added); W. Va. Code § 25-1A-2(c) ("An inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the [WVDOCR] have been exhausted.").  Accordingly, because there are no genuine issues of material fact with regard to Plaintiff's failure to fully exhaust his administrative remedies, the Court **ADOPTS IN PART** the PF&R to the extent it recommends that this Court grant Defendants' Motion to Dismiss and dismiss Plaintiff's claims.  However, the Court **REJECTS IN PART** the PF&R to the extent it recommends dismissal of the Amended Complaint on the basis that Plaintiff failed to allege sufficient factual allegations giving rise to a claim for deliberate indifference.  Rather, the Court's decision is grounded in Plaintiff's failure to exhaust his administrative remedies before filing the instant action.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss,[3] (ECF No. 37), for Plaintiff's failure to exhaust his administrative remedies prior to filing the instant action.

## IV.   CONCLUSION

For the reasons outlined in greater detail above, the Court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's PF&R, **GRANTS** Defendants' Motion to Dismiss, (ECF No. 37), and **DISMISSES** Plaintiff's Amended Complaint, (ECF No. 35).  The Court **DIRECTS** the Clerk to remove this case from the Court's active docket.

**IT IS SO ORDERED**.

---

[3] As previously noted, the Court has converted Defendants' Motion to Dismiss, (ECF No. 37), to one for summary judgment because it has accepted the grievances attached to Defendants' Motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:         February 18, 2022

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

17